**SO ORDERED.**

**SIGNED this 13th day of July, 2007.**

```
                              _____
                                      LEIF M. CLARK
                              UNITED STATES BANKRUPTCY JUDGE
```
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| PHILIP ANTHONY DUENEZ & CRISNA GUADALUPE DUENEZ | 07-50475-C |
| *DEBTORS* | CHAPTER 7 |

### MEMORANDUM DECISION AND ORDER DENYING JOINT MOTION FOR ORDER EXTENDING TIME TO FILE DISCHARGEABILITY COMPLAINT

CAME ON for hearing the foregoing matter. The matter was set along with the hearing on Mr. Philip Anthony Duenez's reaffirmation agreement, in which he proposed to reaffirm the debt the subject of the threatened dischargeability litigation. The court set the reaffirmation agreement because it appeared to represent an undue hardship for the debtors, based on the debtors' income and expenses as they appeared on their Schedules I and J. Mrs. Crisna Guadalupe Duenez and debtors' counsel appeared at the hearing. The creditor's counsel (who received notice) did not appear, nor did he request to appear telephonically (a request that is routinely granted in such circumstances).

## BACKGROUND

At the hearing, the court expressed its reservations regarding the wisdom of the reaffirmation agreement. The first noted that the agreement appeared to represent an undue hardship under section 524(m) of the Code (as the debtors' expenses clearly exceeded their income, even without the inclusion of this additional obligation). In addition, the agreement contained a "snap back" provision, providing that, in the event the debtors failed to make the payments called for in the agreement (representing a reduction from the original amount of the indebtedness), then the amount of the original indebtedness would then become immediately due and payable (and would, of course, not be discharged). The court also questioned whether the requested extension of time to file a dischargeability complaint (tied to the approval of the reaffirmation agreement) was warranted, given that the support for bringing such a complaint appeared to be thin.

The motion for extension of time to file a dischargeability complaint was filed on May 31, 2007, just six days before the deadline for filing a complaint to object to dischargeability. The reaffirmation agreement was filed the same day. In the motion for extension, the creditor alleges that charges incurred on the debtors' credit card between October and November 2006, totaling $2,512.50, would be nondischargeable under section 523(a)(2). No further explanation for why the creditor believed its contention to have support were stated. The motion also did not allege any difficulties in obtaining information to determine whether the debt was nondischargeable, nor did it state that the debtors had been uncooperative in any way. The motion merely stated that, to settle the matter, the debtors and the creditor agreed to extend the time to object to dischargeability to a date 10 days following the deadline for rescinding a reaffirmation agreement, calculated by the parties to be August 14, 2007.

Mrs. Duenez testified at the hearing that the debtors agreed to a reaffirmation agreement because they could not afford to retain counsel to fight the threatened dischargeability complaint. She also testified that the indebtedness in question involved a cash advance that they had taken on her Chase Bank credit card account five months prior to the filing of her case, and that she had used the cash for ordinary living expenses – groceries, gasoline, and the like.

## ANALYSIS

A motion to extend the time for objecting to dischargeability may be granted "for cause." FED.R.BANKR.P. 4007(c); *see also In re Sturgis*, 46 B.R. 360, 365 (W.D. Okla. 1985). Generally, cause is shown when the delay will not prejudice the debtor and will not interfere with the court's administration of its docket. *Id.*; *see also In re Floyd*, 37 B.R. 890 (Bankr. N.D.Tex. 1984) (granting extension to investigate affairs of debtor where it is shown that additional time is needed to conduct the investigation). At least one court even went so far as to suggest that reliance on the court's granting the extension as a matter of course might be grounds for granting such an extension (though the logic of that proposition is tortured on its face). *In re Santos*, 112 B.R. 1001, 1006 (9th Cir. BAP 1990).

In this case, the creditor's asserted basis for the extension is to afford the creditor the opportunity to lock down a settlement with a reaffirmation agreement, with the threat that, should the debtors default on the deal, the door will still be open to object to dischargeability. That rationale, on its face, is not inappropriate. Indeed, the Second Circuit at least tacitly endorsed the propriety of such an arrangement. *In re Benedict*, 90 F.3d 50, 52 (2nd Cir. 1996) (suggesting that cause was shown by virtue of the debtor's waiver of the deadline as part of a larger settlement that included the debtor's executing a reaffirmation agreement). But in *Benedict*, the creditor had more

than its mere allegation that the debt was non-dischargeable. The creditor in that case had asked for documents, including tax returns and financial records of the business, and had sought a Rule 2004 examination of the debtor. The debtor, according to the creditor, dug in his heels, dragged his feet, and otherwise attempted to frustrate the creditor's efforts to get to the bottom of things. Ultimately, after the creditor filed a motion to compel, or to dismiss the entire bankruptcy, the debtor relented, and agreed to a reaffirmation agreement. It was in this context that the Second Circuit found that the lower court should have granted an extension of time to the creditor under Rule 4007. *See id.* at 51-52.

In this case, the indebtedness in question was incurred four or five months before the bankruptcy filing (which was in early February 2007). The Statement of Affairs shows that the debtors were both employed in 2006, and that one of the debtors was not employed in 2007. The employed debtor has a job as an automotive technician with a local car dealership, making about $40,000.00 a year gross. The wife's job loss appears to account for the bankruptcy filing. There is nothing in the creditor's motion to in any way suggest that the charges were incurred in contemplation of filing, or at a time when the debtors did not believe they could still make monthly payments.

The *sole* basis for Chase's motion is its unsupported allegation that the charges in question are nondischargeable under section 523(a)(2). But the charges in question certainly do amount to a colorable claim of nondischargeability simply because they were incurred. On that theory, *all* credit charges incurred prior to bankruptcy are colorably fraudulent.[1] Moreover, even under the

---

[1] Not even the Fifth Circuit's decision in *Mercer* goes that far. That court found that the use of a card could constitute a representation of one's intent to repay, but also noted that such an intent would be fact-sensitive. The creditor would have to establish a misrepresentation with respect to each card use, said the court. *See In re Mercer*, 246 F.3d 391, 409-411 (5th Cir. 2001). The court was also careful to explain that it was not contravening the statute's prohibition on

-4-

generous standards of *Mercer*, the facts presented in the motion fall well short of a cause of action under section 523(a)(2)(A). *See In re Mercer*, 246 F.3d 391, 400-411 (5th Cir. 2001).[2]

Nor can the creditor enjoy the presumptions of section 523(a)(2)(C) to provide a colorable basis for its threat to challenge dischargeability. The presumption under that subsection only arises when there is a showing that a debtor has incurred consumer debts to a single creditor aggregating more than $500 for luxury goods or services obtained within *90* days of the bankruptcy filing, or obtained cash advances aggregating more the $750 within *70* days of the filing. Here, the charges were incurred four to five months prior to the filing, outside the range of these presumptions.

Finally, there is nothing in the record (and the creditor does not contend) that the debtors in any way failed to cooperate in providing information or documentation regarding the charges. There is no evidence, and no suggestion, that the debtors attempted to hide any facts relating to the source or nature of the charges, or the circumstances under which the charges were incurred. In short, there is none of the evidence of lack of cooperation or stonewalling that was present in the *Benedict* case.

In short, the record reflects no basis for the underlying nondischargeability action. Nor is there an allegation of the debtors attempting to impede or frustrate the creditor's investigation (if any) of the debt. When the underlying litigation is baseless, and a debtor is throwing no roadblocks in front of a creditor's investigation, then the props get knocked out from under the strategy that the Second Circuit endorsed in *Benedict*, and no cause for an extension is shown.

The threat of dischargeability litigation in this case appears on these facts to have been utterly groundless. If there was a basis for believing that these charges were incurred in a manner

---

premising a nondischargeability complaint on a debtor's representation of *ability* to repay. *Id.*, at 405.

[2] In *Mercer*, the court explained that the trial court must look for facts demonstrating an intent not to repay the charges when incurred. *Id.*, at 409.

that would suggest that they were fraudulent, or presenting any other cause for an extension, it was for the creditor to demonstrate at the hearing. However, the creditor declined to appear. Moreover, Mrs. Duenez's testimony at the hearing was telling. She acknowledged that she could not afford the repayments contemplated in the reaffirmation agreement, but felt that she had no choice, because she also could not afford to defend herself against a lawsuit brought by the credit card company. Indeed, there is every reason to believe that the motion for an extension, representing as it does the creditor's affirmative intention to bring an otherwise baseless lawsuit as a means of pressuring someone into signing off on a reaffirmation agreement that represents an undue hardship, is a violation of Rule 9011.[3] Because Chase seeks this extension in order to perpetrate this kind of shakedown, the court finds that there is no cause to grant the request.

This court has written before regarding the impropriety of threatening specious litigation in order to "shake down" debtors. *In re Zeman*, 347 B.R. 28, 34 (Bankr. W.D.Tex. 2006). Said the court in that decision,

> Dischargeability litigation is an expensive proposition for debtors, especially when the amount in controversy is (relatively) small. Creditors know this, and can bring actions such as this at relatively low cost, hoping that a debtor will agree to a reaffirmation because that will cost less than litigating the matter – even if the matter is essentially meritless. ... The manner in which this suit was brought and handled offers an excellent example of just why this litigation has all the earmarks of a shakedown. ... If it was, then it was a lawsuit that never had a basis in law or fact in the first place – and that could bring the pleading within Rule 9011 territory.

---

[3] A pleading presented to the court constitutes a certification by the attorney signing the pleading that it is not presented for an improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation. FED.R.BANKR.P. 9011(b)(1). A pleading brought in furtherance of a shakedown is a pleading brought for an improper purpose. *Compare Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 n. 10 (5th Cir. 2006) (rule applied to pleading accusing innocent persons of unfounded sensational wrongdoing, exhibiting a reckless willingness to imposed the burden of unwarranted litigation on others).

*Id.* What was said in *Zeman* applies with even greater force here, where it appears that the creditor's threat to bring expensive – yet groundless – litigation was nothing more than a cudgel for bullying the debtors into surrendering their bankruptcy rights.

### CONCLUSION

The court denies the motion to extend time to file a complaint objecting to dischargeability for failure to show cause. The court declines to further pursue the possibility that the entire set of pleadings filed by this lawyer violated Rule 9011, but only because the court presumes that counsel was not aware of this court's decision in *Zeman*. By this decision, however, counsel for this creditor (as well as this creditor itself) are on notice that shakedown tactics such as those exhibited in this series of pleadings will be met by show cause hearings to determine whether sanctions should issue against the lawyer, the client, or both, pursuant to Rule 9011.

# # #